

**SO ORDERED.**

**SIGNED this 22 day of March, 2007.**

_____
**JAMES D. WALKER, JR.**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 06-50508-JDW |
| AMRON TECHNOLOGIES, INC., | ) | |
| | ) | |
| DEBTOR. | ) | |
| | ) | |
| J. COLEMAN TIDWELL, | ) | ADVERSARY PROCEEDING |
| | ) | NO. 06-5081-JDW |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | |
| | ) | |
| DONNA G. LEGRAND, CHARLENE D. | ) | |
| NEWTON, KEITH C. MOORE, and | ) | |
| FRANCES L. MOORE, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

For Plaintiff:       J. Coleman Tidwell
                     Post Office Box 1796
                     Macon, Georgia 31202

                     Blake Lisenby
                     Post Office Box 229
                     Macon, Georgia 31202

For Defendants:      Jason Orenstein
                     Post Office Box 4086
                     Macon, Georgia 31208

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff's complaint to avoid liens. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(K). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

The parties in this case have stipulated to all the facts necessary for the Court to make a decision. Their stipulation includes the following:

In 2005, Defendant Donna LeGrand became acquainted with the CEO of Debtor Amron Technologies, Inc. She agreed to invest in Debtor by providing funding for the business. Ms. LeGrand talked to her parents, Defendants Keith and Frances Moore, and to her sister, Defendant Charlene Newton,[1] and each agreed to assist in funding the loan. In August 2005, Defendants jointly agreed to make a loan to Debtor. On August 23, 2005, Mr. and Ms. Moore, jointly as husband and wife, paid $10,000 to Ms. LeGrand. Ms. LeGrand added $10,000 of her own money, and wired $20,000 to Debtor. On August 24, 2005, Ms. Newton paid $30,000 to Ms. LeGrand, who then wired the money to Debtor. In aggregate, Debtor received loan proceeds totaling $50,000.

The parties executed a promissory note and security agreement naming Debtor as the borrower and Defendants as the lenders. The note provided, "NOW, THEREFORE, FOR VALUE RECEIVED, Borrower hereby promises to pay to the order of Lenders ... the principal

---

[1] In keeping with prior opinions issued in this adversary proceeding, the Court will use the term "Defendants in Default" when referring solely to Defendants other than Ms. LeGrand.

sum of Fifty Thousand Dollars ($50,000) together with Interest ....” (Complaint, ex. 3.) The parties agree Debtor is indebted to Defendant pursuant to the note, and Debtor has made no payments on the note. Thus, Defendants have a valid claim for $50,000 plus interest. The note further provided if Debtor defaulted, “Lenders will have the right <u>jointly and severally</u>, upon written notice to Borrower, to accelerate and declare due the entire unpaid principal amount of this Note, together with accrued but unpaid interest.” (Complaint, ex. 3, emphasis added.)

Ms. LeGrand filed a financing statement related to the note. She listed Amron Technologies as the debtor and herself as the secured party. She described the collateral as substantially all Debtor's assets. Plaintiff concedes Ms. LeGrand has a properly perfected security interest in the collateral. However, Defendants in Default were not listed on the financing statement as secured parties, nor did any of them file a separate financing statement.

On March 30, 2006, Debtor became the subject of an involuntary bankruptcy petition. On April 20, 2006, the Court entered an order for relief under Chapter 7. Plaintiff J. Coleman Tidwell was appointed as Chapter 7 trustee. Plaintiff initiated this adversary proceeding to determine which Defendants have a perfected security interest in Debtor's assets and the extent of any such security interest. The Court held a trial in this matter on January 30, 2007. For the following reasons, the Court finds Ms. LeGrand is the only Defendant with a perfected security interest, but her security interest is perfected for the full value of the note.

**Conclusions of Law**

<u>Who Is Perfected?</u>

The first question in this case is whether or not all Defendants have perfected security

interests. Plaintiff has conceded each Defendant has a valid security interest and Ms. LeGrand properly perfected her security interest by filing a financing statement. Defendants in Default have argued Ms. LeGrand's financing statement is sufficient to perfect all their security interests.

The secured transactions at issue are governed by Article 9 of the Uniform Commercial Code.[2] With some exceptions not relevant here, U.C.C. § 9-310 provides "a financing statement must be filed to perfect all security interests ...." Pursuant to U.C.C. § 9-502(a), a financing statement must contain the name of the debtor, the name of the secured party or a representative of the secured party, and a description of the collateral. Pursuant to U.C.C. § 503(e), the financing statement may name multiple secured parties. Finally, pursuant to U.C.C. § 9-506(a), if a financing statement substantially complies with the U.C.C. requirements, minor errors and omissions will not affect its validity unless they are seriously misleading.

Defendants in Default argue their security interests are perfected for several reasons. First, the omission of their names from the financing statement filed by Ms. LeGrand is not seriously misleading. Thus, under § 9-506(a), the financing statement validly perfects their security interests. By this argument, Defendants in Default assume the omission is minor. However, a financing statement that omits one of the three formal requirements (debtor, secured party, and collateral) does not substantially comply with the U.C.C and cannot be considered minor. Trust Corp. of Mont. v. Patterson (In re Copper King Inn, Inc.), 918 F.2d 1404, 1407 (9th Cir. 1990) ("It is unlikely ... [the] legislature intended to excuse the omission of basic data such

---

[2] There is some question about which state's commercial code applies in this case. The promissory note refers to both North Carolina and South Carolina law. During the trial, both parties argued Georgia law. The Court need not delve further into this question because all three states have adopted Revised Article 9, and the provisions relevant to this case are identical in all material respects under each state's law.

as the names of the parties to the security agreement.); In re Murray, 2 U.C.C. Rep. Serv. 667 (D. Ore. 1964).

Second, Defendants in Default suggest Ms. LeGrand signed the financing statement on their behalf in a representative capacity as permitted by § 9-502(a)(2).  Pursuant to § 9-503(d), Ms. LeGrand's "[f]ailure to indicate the representative capacity ... does not affect the sufficiency of [the] financing statement."  However, according to the stipulated facts, no agency agreement–either express or implied–existed between Ms. LeGrand and Defendants in Default.  Without such an agreement, Ms. LeGrand had no authority, either actual or implied, to sign the financing statement on behalf of Defendants in Default.  See 3 Am. Jur. 2d, Agency §15; Copper King Inn, 918 F.3d at 1409.

Finally, Defendants in Default argue the purpose of Article 9 is to put the world on notice about a possible security interest in property of a debtor, and Ms. LeGrand's financing statement alone is sufficient to create such notice.  Defendants in Default may be correct about the purpose of Article 9, but the Court is not persuaded the requisite notice is satisfied with an insufficient financing statement–especially when the requirements of a financing statement have been reduced to their simplest components by enactment of Revised Article 9.  Defendants in Default cannot piggyback on the notice of Ms. LeGrand's security interest when they made no effort to publicize their own interests.

The Court further notes that some multi-lender transactions are structured in such a way that only one lender need file a financing statement. For example, with syndication loans, multiple lenders loan money to the borrower, and each lender has a contractual arrangement with the borrower.  By contractual agreement among the lenders, one lender is designated agent for all

the lenders. The agent then has authority to sign the financing statement in a representative capacity for all the lenders. See W. Crews Lott et al., Multiple Lender Transactions: Current Issues, 112 Banking L.J. 846, 846-47 (1995). In a participation agreement, one lender (the lead lender) provides the loan, and only that lender has a contractual relationship with the borrower and needs to file a financing statement. The lender then sells portions of the loan to other financial institutions. Id. at 846. The common thread in both transactions is an agreement among the lenders. As already noted, Defendants in this case had no such agreement, so the loan cannot be characterized as either a participation or a syndication.

For the foregoing reasons, the Court finds Defendants in Default did not perfect their security interests.

## To What Extent Is Ms. LeGrand Perfected?

The Court has determined Ms. LeGrand is the only Defendant with an enforceable lien. The next question is the extent of that lien. In other words, how much must Plaintiff pay Ms. LeGrand to satisfy her claim of lien?

Plaintiff has argued Ms. LeGrand is only perfected for $10,000, the amount of her contribution to the loan and, because she provided only $10,000 in value, her security interest did not attach for more than the $10,000 contribution. See U.C.C. § 9-203. Plaintiff's argument would be persuasive if the agreement were for a contemporaneous exchange of cash in unequal amounts, which would be unenforceable due to a failure of consideration. Williston on Contracts § 7:21 (4th ed. 2006). Although courts generally do not inquire into adequacy of consideration, "in such a case, it is clear that the law cannot indulge in the presumption of equivalence between the consideration and the promise. ... [A] consideration of $1.00 will not support a promise to

pay at the same time and place a larger sum." Id. However, a promise to pay a larger sum at a later date will render the smaller sum adequate consideration. Id. In this case, Ms. LeGrand provided consideration of $10,000. The promise made by Debtor in exchange for that consideration was not merely repayment of a larger sum, but a larger sum repaid with interest sometime in the future. The value of the time allowed for repayment is determined by agreement of the parties.

To analyze the agreement, the Court will apply the cardinal rule of contract interpretation by looking to the four corners of the document and giving effect to all its provisions. Williston on Contracts § 32:5. The promissory note and security agreement provides: "Borrower hereby promises to pay to the order of Lenders ... the principal sum of Fifty Thousand Dollars ($50,000) together with Interest ...." Nothing in that language indicates Debtor's liability to individual Defendants is limited according to the proportion of the Defendant's contribution to the loan. Furthermore, the note contemplates that any one Defendant may accelerate the loan and demand payment in the event of default by providing, "Lenders will have the right jointly and severally, upon written notice to Borrower, to accelerate and declare due the entire unpaid principal amount of this Note, together with accrued but unpaid interest." This supports a determination that Ms. LeGrand is entitled to demand full satisfaction of the note to release her lien.

Unfortunately, the agreement is poorly drafted such that it could lead to troublesome results under different fact scenarios. This is primarily due to a lack of any sort of express agreement among Defendants. No consensus is required for one Defendant to call the loan. No provision is made for dividing the proceeds of the loan among Defendants. Suppose before bankruptcy one of the Defendants in Default had accelerated the loan and demanded full payment

upon default by Debtor. Would Ms. LeGrand be obliged to release her lien, because the note was satisfied, even if she received none of the money? That question, of course, is not before the Court. The possibility for inequities arising in circumstances other than those present in this case cannot deter the Court from interpreting the agreement as written in the factual context of this case. As explained, nothing in the agreement limits the recovery of any Defendant to an amount less that the total value of the note.

For the foregoing reasons, the Court is persuaded Ms. LeGrand's security interest and her perfection thereof extends to the full amount due under the note. Therefore, the Court finds Ms. LeGrand's lien is valid to the extent of the value of her collateral, $50,000 plus accrued interest.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT